UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JEFFREY A. BECKERMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-cv-105-SNLJ |
| | ) |
| GLEN BABICH, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Amended Complaint, filed by defendants William Stange, Brad Clark, Myrtle Pruitt, and Brandy Hickey. (Docket No. 29). Plaintiff has not responded to the motion, and the time for doing so has passed. The motion will be granted in part, and denied in part.

**I. Background**

Plaintiff is an inmate confined to the custody of the Missouri Department of Corrections ("MDOC"). Stange, Clark, Pruitt and Hickey are employed by MDOC. The events giving rise to this lawsuit occurred at the Southeast Correctional Center ("SECC").

In the amended complaint, plaintiff alleges as follows. On June 2, 2015, plaintiff fractured his right hand while fighting with another inmate. At approximately 5:30 p.m., he told a corrections officer he needed medical care for his hand, and he was evaluated by defendant Cody Stanley, a nurse. Stanley measured plaintiff's vital signs and departed, and plaintiff was placed into a cell with another inmate.

At approximately 6:00 p.m. that same evening, Clark visited plaintiff's cell to conduct an initial administrative segregation hearing. Plaintiff showed Clark his "obviously fractured right

hand that was very swollen and by now discolored," and requested medical treatment. (Docket No. 8 at 21). Clark ignored his request. At approximately 7:25 p.m., Pruitt and Hickey visited plaintiff's cell, and plaintiff showed them his "obviously fractured right hand that was by this time very swollen and discolored, and pleaded for immediate medical treatment from both defendants and made them well aware that medical staff was denying him any medical treatment whatsoever." (*Id.* at 22). Pruitt and Hickey ignored his request.

On June 9, 2015, plaintiff was taken to the nurse's station and evaluated by defendant Jason Clements, a nurse. Clements taped two tongue depressors around plaintiff's right fourth metacarpal and ring finger, and referred plaintiff for an x-ray to be performed at a later date. On June 11, 2015, plaintiff underwent an x-ray, which was positive for fracture. Plaintiff then received medical treatment consisting of a hard splint, a plastic bag to cover the splint while showering, and pain medication.

On June 23, 2015, plaintiff was transported to Jefferson City, Missouri to see Dr. Wilson, an orthopedic specialist. Dr. Wilson told plaintiff that, because of the long delay in medical treatment, he would require extensive reconstructive surgery that would involve re-fracturing his hand, and then repairing it using a bone from his wrist, a metal plate, and six pins. Dr. Wilson requested approval of the surgery, and ultimately performed it on July 22, 2015.

Plaintiff alleges that Clark, Pruitt and Hickey were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff also alleges that Clark, Pruitt and Hickey failed to comply with Mo. Rev. Stat. 217.410, which required them to notify the department director that plaintiff was suffering neglect and abuse. Plaintiff alleges that Stange is responsible for the actions of his officers. Plaintiff also alleges that Stange transferred him to another facility after he initiated the grievance process.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The motion to dismiss standard is different from the frivolity review standard under 28 U.S.C. § 1915(e)(2)(B), and dismissal for failure to state a claim does not invariably mean that the claim lacked arguable merit. *Id.* at 329. "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id. at 328.*

When ruling on a motion to dismiss, the Court must assume that all of the factual allegations in the complaint are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and draw all reasonable inferences in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The Court disregards legal conclusions, and reviews the factual allegations for facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677. To survive a Rule 12(b)(6) motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (*en banc*).

## III. Discussion

### A. Defendants Clark, Pruitt, and Hickey: Eighth Amendment

Plaintiff alleges that Clark, Pruitt and Hickey (collectively "defendants") violated his Eighth Amendment right to be free from cruel and unusual punishment through deliberate indifference to his serious medical needs. In support, plaintiff alleges that defendants

3

intentionally denied him access to medical care, despite the fact that he displayed to them his obviously swollen and discolored hand and requested treatment. Plaintiff alleges that the delay in medical treatment adversely affected his condition to the point that he required extensive reconstructive surgery. In the instant motion, defendants contend that plaintiff fails to state a claim.

The Eighth Amendment protects plaintiff from a confinement that involves cruel and unusual punishment through deliberate indifference to his serious medical needs. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

To prevail on a deliberate indifference claim, plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of but deliberately disregarded such need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" as "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011). When an inmate alleges that the delay in treatment is the constitutional deprivation, the objective severity of the deprivation should also be measured by reference to the effect of the delay in treatment. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995).

For the objective prong, because plaintiff's hand had not been diagnosed by a physician, he must show that his injury was so obvious that a layperson would recognize the need for a doctor's attention. Taking plaintiff's allegations as true, the Court concludes that he has established this objective prong. Plaintiff alleges that, when he showed his hand to defendants there were obvious physical manifestations of fracture, in that the hand was swollen and

discolored. Even a layperson viewing an obviously swollen and discolored hand would easily recognize the need for a doctor's attention. *See Holden*, 663 F.3d at 342; *see also Hubbard v. Gross*, 199 Fed. Appx. 433, 438 (6th Cir. 2006) (broken and swollen hand was so obvious that even a layperson would easily recognize the necessity for a doctor's attention). Plaintiff has also sufficiently alleged that the delay in treatment adversely affected his condition and prognosis, in that he alleges the delay in treatment necessitated extensive reconstructive surgery. *See Beyerbach*, 49 F.3d at 1326. Finally, plaintiff has sufficiently alleged that defendants deliberately disregarded his objectively serious medical need by ignoring his repeated requests for medical treatment, leaving him to suffer the pain and incapacity of a broken hand for a week until finally seeing a nurse (who then merely taped tongue depressors to plaintiff's broken hand).

Defendants argue that plaintiff was not deprived of medical care as evidenced by his own admissions that he was examined by a nurse, had tongue depressors taped to his broken hand several days after the fact, subsequently received an x-ray and orthopedic evaluation, and ultimately underwent surgery. This argument is not well taken. Plaintiff does not allege that he never received medical treatment or that he disagreed with the course of the medical treatment he received; he alleges that the defendants were deliberately indifferent to his serious medical needs and created a delay in his receipt of medical treatment that adversely affected his condition and prognosis. Defendants contend: "[s]ince plaintiff was not deprived access to a nurse's examination on June 2, 2015, the Defendants could reasonably rely on the nurse's examinations as sufficient care for Plaintiff's injury." (Docket No. 30 at 7). Defendants also argue that plaintiff failed to establish an objectively serious medical need because he fails to allege a medical diagnosis of his hand before speaking with Clark, and he fails to allege a medical diagnosis or a doctor's order before speaking with Hickey and Pruitt. These arguments are not

5

well taken. The nurse's evaluation preceded defendants' interactions with plaintiff, and defendants do not argue, with any specificity, that they were aware of the nurse's assessment or that they relied upon it in deciding to deny plaintiff's requests for medical care. Also, alleging a medical diagnosis or doctor's order would have required plaintiff to be seen by a doctor, the very thing plaintiff alleges defendants unconstitutionally denied him. Plaintiff sufficiently establishes an objectively serious medical need in that he alleges he displayed a hand with obvious physical manifestations of injury, and that the resulting delay adversely affected his condition and prognosis. Having taken plaintiff's allegations as true and carefully considered defendants' arguments in the instant motion, the Court concludes that plaintiff has sufficiently stated a claim against Clark, Hickey and Pruitt for violating his Eighth Amendment right to be free from cruel and unusual punishment through deliberate indifference to his serious medical needs.

B. Defendants Clark, Pruitt, and Hickey: Mo. Rev. Stat. 217.410

Plaintiff alleges that defendants violated the reporting requirements of Mo. Rev. Stat. 217.410. Defendants argue that, because Mo. Rev. Stat. 217.410 confers no federal right to offenders, plaintiff's allegations that they failed to follow it do not state a cause of action under 42 U.S.C. § 1983. The Court agrees.

Section 1983 of Title 42 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978). It provides no substantive rights; it merely provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the

Constitution or laws of the United States and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Chapter 217 of the Missouri Revised Statutes requires MDOC employees to report offender abuse under certain circumstances, and criminalizes the failure to report such abuse. Mo. Rev. Stat. 217.410. It confers no federal rights to offenders, and therefore, the allegation that defendants violated it fails to allege the violation of a federal right and consequently fails to state a claim under § 1983. Because plaintiff's claims that defendants violated Mo. Rev. Stat. 217.410 are fatally flawed in their legal premise and designed to fail, *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001), they will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Furthermore, Clark, Pruitt and Hickey are entitled to qualified immunity on plaintiff's claim that they violated Mo. Rev. Stat. 217.410. Qualified immunity protects state actors from liability under § 1983 unless the plaintiff shows both that the official violated a constitutional right and that the right was "'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In this case, plaintiff has failed to show the violation of a constitutional right via his claim that Clark, Hickey and Pruitt violated Mo. Rev. Stat. 217.410, and they are entitled to qualified immunity on that claim alone. Finally, the Court agrees that plaintiff's official-capacity claims against Clark, Pruitt and Hickey are barred by sovereign immunity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

C. Defendant Stange

Plaintiff alleges that, three days after he filed "the first stage of his Inmate Grievance Process, a Informal Resolution Request (IRR), regarding his fractured right hand," Stange transferred him to another institution where he was immediately placed on "sleeper status."

7

(Docket No. 8 at 23). Plaintiff also alleges that Stange transferred him in a calculated effort to suppress his use of the prison grievance procedure. In the instant motion, Stange argues that plaintiff's claims against him should be dismissed because he is being sued as a supervisor and not because he was personally or directly involved in any incident.

Although "a prisoner enjoys no constitutional right to remain in a particular institution," *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985), and although prison officials generally may "transfer a prisoner for whatever reason or for no reason at all," *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), a prisoner cannot be transferred in retaliation for the exercise of a constitutional right. *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009) (*quoting Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)). "[P]rison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." *Murphy*, 769 F.2d 502, 503 (*citing Garland v. Polley*, 594 F.2d 1220, 1222-23 (8th Cir. 1979)).

To state a cause of action for retaliation under § 1983, a plaintiff need allege only that he exercised a constitutionally protected right, and that his exercise of that right motivated prison officials to transfer him to a different institution. *See Orebaugh v. Caspari*, 910 F.2d 526, 529 (8th Cir. 1990) ("To state a cause of action for retaliation under section 1983, Orebaugh need allege only that he exercised his right to petition for redress of grievances and that his exercise of this right motivated prison officials to bring disciplinary charges against him"). Construed liberally, the amended complaint sufficiently states a cause of action, inasmuch as plaintiff alleges that he exercised his First Amendment right to file a grievance and his exercise of that right motivated Stange to transfer him.

Plaintiff also alleges that Stange was deliberately indifferent to his serious medical needs because Stange is ultimately responsible for the actions of all correctional staff at SECC and failed to properly oversee them. He does not allege that Stange was causally linked to, or that he bore any personal responsibility for, the denial of his requests to receive medical care. Stange argues that plaintiff's claims against him should be dismissed because he is being sued as a supervisor and not because he was personally or directly involved in any incident. With respect to plaintiff's deliberate indifference claims against Stange, the Court agrees. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). Claims sounding in respondeat superior are not cognizable under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Plaintiff's deliberate indifference claims against Stange will therefore be dismissed.

In addition, the Court agrees that Stange is entitled to qualified immunity on plaintiff's deliberate indifference claims because plaintiff has failed to show that he violated a constitutional right. *See Pearson*, 555 U.S. at 232. Finally, the Court agrees that plaintiff's official-capacity claims against Stange are barred by sovereign immunity. *See Graham*, 473 U.S. at 165-66.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 29) is **GRANTED** to the extent it seeks to dismiss plaintiff's claims against Clark, Pruitt and Hickey for violating Mo. Rev. Stat. 217.410; to the extent it seeks to

dismiss plaintiff's deliberate indifference claim against Stange; and to the extent it seeks to dismiss plaintiff's official capacity claims against Stange, Clark, Pruitt and Hickey.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 29) is **DENIED** in all other respects.

An order of dismissal will be filed separately.

Dated this 21st day of February, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE