# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY A. BECKERMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-105-SNLJ |
| | ) | |
| GLEN BABICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motions for summary judgment (#74; #79). The defendants are divided into two groups. Dr. Glen Babich, Julie Fipps, Jewel Cofield, Jason Clements, Cody Stanley, Lisa Taber, and Dr. John Eppolito make up the "Corizon Defendants." Brad Clark, Brandy Hickey, Myrtle Pruitt, and William Strange make up the "Correctional Center Defendants." Plaintiff Jeffrey Beckermann has not responded to either motion, and the time for doing so has passed. Both motions are granted.

## I.     Background

The events giving rise to this lawsuit occurred at the Southeast Correctional Center ("SECC"), where plaintiff was an inmate. On June 2, 2015, plaintiff fractured his right hand while fighting with another inmate. After the fight, plaintiff was taken to the segregation unit. Shortly after, defendant Stanley ("Nurse Stanley") evaluated plaintiff. Plaintiff complained that his right hand hurt, so Nurse Stanley asked plaintiff to move his hand. Plaintiff did so easily, and Nurse Stanley observed no swelling, deformity, signs of

1

major physical trauma, or signs of apparent distress. Nurse Stanley did not see anything that suggested plaintiff had fractured his right hand or fingers or that plaintiff required further evaluation or work up.

Next, Nurse Stanley explained to plaintiff the two ways to seek medical care while in segregation. First, plaintiff could submit a Health Services Request ("HSR"). Nurses collect HSRs each morning and then determine the appropriate care. Second, if plaintiff had emergent health concerns, he could activate the Incident Command System ("ICS"), a self-declared medical emergency system that requires correctional officers to contact health services.

About thirty minutes later, plaintiff was interviewed by defendant Clark ("Officer Clark"), the lieutenant who was supervising the segregation unit. In this role, Officer Clark talked with offenders to find out why they were placed in the segregation unit. Plaintiff claims he told Officer Clark that medical refused to treat him and he was suffering due to lack of treatment and pain medication. Plaintiff also claims that his hand was obviously fractured, swollen, and discolored. Officer Clark disputes this and says plaintiff did not say that he was refused medical treatment.

Later that night, defendants Pruitt and Hickey ("Officer Pruitt" and "Officer Hickey") interviewed plaintiff. Plaintiff showed Officer Hickey his right hand and asked Officer Hickey when a nurse would look at it. Officer Hickey did not think plaintiff's hand presented a medical emergency. Officer Hickey explained that plaintiff already had seen a nurse when he was first taken to segregation. Officer Hickey then explained to plaintiff the two ways to seek medical care while in segregation. Officer Pruitt does not

2

recall plaintiff showing his hand or saying that he was refused medical treatment, was in pain, or needed medical care.

A couple hours later, plaintiff saw defendant Taber ("Nurse Taber"). Plaintiff showed Nurse Taber his hand and asked for medical attention. Nurse Taber gave plaintiff an HSR and told him to fill it out. Plaintiff claims he filled out the HSR and submitted it the next day, but there is no documentation to this effect.

Three days later, plaintiff submitted an HSR requesting care for his knee; he did not submit an HSR for his right hand. Four days after that, plaintiff submitted an HSR about his right hand. Later that day, defendant Clements ("Nurse Clements") evaluated plaintiff. Plaintiff reported pain and swelling in his right hand and explained that he could not make a fist. He denied numbness and tingling. Plaintiff's right hand exhibited no heat, redness, ecchymosis (reddish or bluish discoloration of the skin), deformity, or discoloration, but Nurse Clements observed swelling and warmth. Nurse Clements assessed plaintiff with a possible fracture or dislocation, administered ibuprofen, immobilized and splinted plaintiff's hand, applied ice, and referred plaintiff to a higher-level provider. Nurse Clements also noted that he would follow up with plaintiff's care to ensure that a doctor had ordered an x-ray. At no point did plaintiff activate the ICS.

Two days later, plaintiff received an x-ray that showed a fracture. Defendant Eppolito ("Dr. Eppolito") requested an orthopedic referral and ordered Tylenol #3, a narcotic pain medication. Defendant Babich ("Dr. Babich") approved the consult request, and plaintiff met with an orthopedic specialist twelve days later. Plaintiff claims that, because of the long delay in medical treatment, the orthopedic specialist said he

3

would require extensive reconstructive surgery that would involve re-fracturing his hand. This is not reflected in any of the orthopedic specialist's medical records. The orthopedic specialist requested approval for surgery, Dr. Babich approved the request, and the specialist operated about a month later. Of course, if the orthopedic specialist thought the surgery were urgent, she could have requested an earlier date. Nothing in plaintiff's medical records shows that a delay in treatment affected his surgery or recovery.

After plaintiff's first appointment with the orthopedic specialist, but before surgery, plaintiff was transferred to Eastern Reception, Diagnostic and Correctional Center. Defendant Strange ("Deputy Warden Strange") did not request plaintiff's transfer, but he did approve it. Deputy Warden Strange claims that plaintiff was transferred from SECC to open up beds for safety and security reasons.

Plaintiff then filed suit based on the medical treatment (or alleged lack thereof) he received for his fractured hand. He claims both groups of defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.[1]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there

---

[1] Plaintiff sued the Correctional Center Defendants in their official and individual capacities. This Court dismissed plaintiff's official-capacity claims. (#45 at 7, 9). Plaintiff also claimed that Officers Clark, Pruitt, and Hickey violated a state statute in failing to notify the department director that plaintiff was suffering neglect and abuse. This Court dismissed those claims. (#45 at 7). Finally, this Court dismissed plaintiff's deliberate-indifference claim against Deputy Warden Strange. (# 45 at 9). These claims are currently before the Court: (1) deliberate-indifference claims against the Corizon Defendants, (2) individual capacity deliberate-indifference claims against the Correctional Center Defendants, except Deputy Warden Strange, and (3) an individual capacity retaliation claim against Deputy Warden Strange.

4

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the Court must review the facts in the light most favorable to the party opposing the motion and must give that party the benefit of any inferences that logically can be drawn from those facts. *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1053 (8th Cir. 2004). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). Because plaintiff did not oppose the motions, the matters in the Corizon Defendants' and the Correctional Center Defendants' statements of uncontroverted facts (#76; #81) are deemed admitted for the purposes of this motion. E. D. Mo. L. R. 7-4.01(E).

**III. Discussion**

### A. The Corizon Defendants[2]

Plaintiff has an Eighth Amendment right not to have known, objectively serious medical needs disregarded by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). "For a violation, [plaintiff] must show '(1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014) (second and third alterations in original) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). The first element is objective, the second subjective. *Jolly*, 205 F.3d at 1096.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Fourte*, 746 F.3d at 388 (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Pietrafeso v. Lawrence Cty.*, 452 F.3d 978, 983 (8th Cir. 2006) (quoting *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)). "Deliberate indifference is 'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional

---

[2] The Corizon Defendants argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies before filing this suit. Plaintiff filed three grievances related to the treatment of his hand. It seems that plaintiff did, in fact, fail to exhaust his administrative remedies before filing this suit for two of these. But there is some dispute as to whether he exhausted his administrative remedies for the third grievance, where he complained that he was denied medical treatment for his broken hand. Because the Corizon Defendants are entitled to summary judgment on the merits, the Court need not address this argument.

violation.'" *Fourte*, 746 F.3d at 387 (*quoting Jolly*, 205 F.3d at 1096). "A prison official is deliberately indifferent to a prisoner's serious medical needs *only if* he is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Pietrafeso*, 452 F.3d at 984 (emphasis added) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Court will address each defendant separately.

### 1. Nurse Stanley

As mentioned above, Nurse Stanley evaluated plaintiff after he was taken to segregation. Nurse Stanley asked plaintiff to move his hand. Plaintiff did so easily, and Nurse Stanley observed no swelling, deformity, signs of major physical trauma, or signs of apparent distress. Nurse Stanley did not see anything that suggested plaintiff had fractured his right hand or fingers or that plaintiff required further evaluation or work up. Although plaintiff disagrees with Nurse Stanley's assessment, that does not amount to an Eighth Amendment violation. *Fourte*, 746 F.3d at 387. Even if Nurse Stanley were negligent and underestimated the severity of plaintiff's injury, this still does not rise to the level of deliberate indifference. *Estelle*, 429 U.S. at 104. Also, there is no verified medical evidence that any alleged delay in treatment harmed plaintiff. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). Because there is no evidence in the record that Nurse Stanley was deliberately indifferent, there is no genuine issue of any material fact, and Nurse Stanley is entitled to summary judgment.

### 2. Nurse Taber

7

Plaintiff saw Nurse Taber the night he was transferred to segregation. When plaintiff showed Nurse Taber his hand and asked for medical attention, Nurse Taber gave him an HSR and told him to fill it out. If plaintiff tried stopping Nurse Taber when she was administering inmate medication, per SECC policy, she could not stop to evaluate plaintiff. Plaintiff could have submitted an HSR, and he could have activated the ICS. When plaintiff finally did submit an HSR for his hand—seven days after he was transferred to segregation—he was evaluated. Because there is no evidence in the record that Nurse Taber was deliberately indifferent, there is no genuine issue of any material fact, and Nurse Taber is entitled to summary judgment.

### 3. Nurse Clements

When plaintiff finally submitted an HSR for his hand, Nurse Clements evaluated him. He assessed plaintiff with a possible fracture or dislocation, gave plaintiff ibuprofen, immobilized and splinted plaintiff's hand, applied ice, and referred plaintiff to a higher-level provider. Nurse Clements also noted that he would follow up with plaintiff's care to ensure that a doctor had ordered an x-ray. Plaintiff received an x-ray two days later. Nothing in the record suggests that Nurse Clements was deliberately indifferent. Thus, there is no genuine issue of any material fact, and Nurse Clements is entitled to summary judgment.

### 4. Dr. Eppolito

After plaintiff received an x-ray that showed a fracture, Dr. Eppolito requested an orthopedic referral and ordered Tylenol #3, a narcotic pain medication. He also renewed

8

plaintiff's Tylenol #3 prescription while plaintiff was waiting for his appointment with the orthopedist specialist. None of this was deliberately indifferent.

After his surgery, plaintiff filed a grievance with SECC, claiming that he had been denied medical treatment for his broken hand. Dr. Eppolito reviewed plaintiff's medical records, which showed that plaintiff had been provided extensive treatment for his complaints, according to the independent medical judgment of his qualified medical providers. Although plaintiff might disagree with Dr. Eppolito's conclusion, that does not rise to the level of deliberate indifference. *See Fourte*, 746 F.3d at 387. Because there is no evidence in the record that Dr. Eppolito was deliberately indifferent, there is no genuine issue of any material fact, and Dr. Eppolito is entitled to summary judgment.

### 5. Dr. Babich

Dr. Babich approved the orthopedic specialist's request to operate on plaintiff. He also responded to plaintiff's grievance appeal and concluded that plaintiff had been provided extensive medical treatment. Because there is no evidence in the record that Dr. Babich was deliberately indifferent, there is no genuine issue of any material fact, and Dr. Babich is entitled to summary judgment.

### 6. Fipps and Cofield

Fipps assisted Dr. Eppolito with his response to plaintiff's grievance, and Cofield assisted Dr. Babich with his response to plaintiff's grievance appeal. In doing so, nothing in the record suggests that Fipps or Cofield was deliberately indifferent. Instead, the medical records show that plaintiff received extensive treatment. Fipps and Cofield are entitled to summary judgment.

### B. Correctional Center Defendants

#### 1. Officers Clark, Pruitt, and Hickey

Plaintiff claims that Officers Clark, Pruitt, and Hickey were deliberately indifferent to his serious medical needs. Officer Clark interviewed plaintiff after he was transferred to segregation. Officer Clark claims that plaintiff never mentioned he was refused medical treatment. Later, Officer Hickey looked at plaintiff's hand and did not think it presented a medical emergency. Officer Hickey explained that plaintiff had seen a nurse when plaintiff was first taken to segregation and explained to plaintiff the two ways to seek medical care while in segregation. Officer Pruitt does not recall plaintiff showing his hand or saying that he was refused medical treatment, was in pain, or needed medical care. Because there is no evidence in the record that Officers Clark, Pruitt, and Hickey were deliberately indifferent, there is no genuine issue of any material fact, and they are entitled to summary judgment.[3]

#### 2. Deputy Warden Strange

Plaintiff claims that Deputy Warden Strange retaliated against him and transferred him to a different facility to suppress his use of the grievance process. To establish a claim for retaliation in violation of the First Amendment under 42 U.S.C. § 1983, the Plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the

---

[3] Because the Officers did not violate plaintiff's constitutional right, they also are entitled to qualified immunity. *See Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

exercise of the protected activity." *Spencer v. Jackson Cnty*, 738 F.3d 907, 911 (8th Cir. 2013) (*quoting Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). This claim fails for two reasons.

First, plaintiff never filed a grievance related to this claim. Thus, plaintiff failed to exhaust his administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). Second, nothing in the record suggests that Deputy Warden Strange approved plaintiff's transfer because plaintiff used the grievance process. Instead, the Functional Unit Manager requested Plaintiff's transfer "to open up beds for security breach by other offenders." Thus, Deputy Warden Strange is entitled to summary judgment.[4]

## IV. Conclusion

Summary judgment will be granted in favor of all defendants.

Accordingly,

**IT IS HEREBY ORDERED** that the Corizon Defendants' motion for summary judgment (#74) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Correctional Center Defendants' motion for summary judgment (#79) is **GRANTED**.

So ordered this   2nd   day of January 2018.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Because Deputy Warden Strange did not violate plaintiff's constitutional right, he also is entitled to qualified immunity. *See Krout*, 583 F.3d at 564.

11